Thank you, your honors. Good morning. I may please the court. My name is Alberto de Diego Carreras. I'm a certified law student and I represent the appellant, Daniel Coston. As your court is already aware, I'd like to reserve five minutes for rebuttal from my co-counsel, Amaris Montes. This appeal arises from a 1983 action brought by Mr. Coston against defendants Nangalama and Hale, alleging their deliberate indifference to his medical needs. On appeal, Coston challenges four errors committed by the district court. I'd like to begin by addressing the instructional error. This court's precedents have established that the deference instruction is only appropriate in certain outlier medical care cases. In shorter, this court held that even in such outlier cases, the instruction is inappropriate and must not be given where there is substantial evidence of an exaggerated response, or at a minimum, if there is at least a material dispute as to whether defendant's response was exaggerated, the instruction must be supplemented by an additional instruction informing the jury not to defer if they find that defendant's response was exaggerated. Shorter, moreover, tells us that where there are less abusive, less extreme responses available, a response is exaggerated. Here, Coston provided substantial evidence that defendant's response was exaggerated, substantial evidence upon which a jury could have concluded that defendant's response was exaggerated. For one, Coston introduced evidence in the form of the testimony of defendant's own colleague, correctional officer Boggs, that suggested that the medication in question was not delivered to him properly all of the time, that sometimes it was delivered to him left in his empty cell. And the testimony, moreover, was that when it was delivered to him in person, he did take the medication. This suggests that even if there were security concerns attendant to the 50 pills found in his cell, defendants had a whole host of alternative, less extreme responses short of abrupt discontinuation that they could have taken to address both their security concerns and Coston's medical needs. So, for one, and most obviously, they could have simply adhered moving forward to the proper protocol for delivering medication as prescribed by the prison's own guidelines, which is not to leave morphine pills in empty cells, but rather to deliver them to the prisoners in person and watch them take them. Now, Mr. Carreras, it was the guidelines document or the medical policy document that was excluded from evidence by the trial court, correct? Yes, your honor. And would you talk to me about the relationship between that excluded evidence and this issue of exaggeration? Are they connected? They are absolutely connected, your honor. And the fact that that policy was excluded reinforces and compounds the prejudice of the instructional error. So, for example, in shorter on pages 1188 and 1189 of the opinion, the court highlights, emphasizes that one of the things in that case that suggested that defendant's response was exaggerated was that there was a policy in existence that prescribed a whole host of alternative, less extreme responses, and yet the prison officials had disregarded it. Likewise, here, there was a policy that explicitly and directly addressed what prison officials should do in cases of non-compliance, and yet defendants disregarded it and instead opted for the most extreme possible response, which was to discontinue the medication abruptly and entirely. So, like in shorter, that is evidence that the defendant's response was exaggerated and it was therefore prejudicial error to exclude the policy. But even without the policy, Costin introduced testimony again from Officer Boggs as to the proper protocol for delivering medication and evidence the defendants were not following that proper protocol, meaning that moving forward, they could have simply followed that protocol and that would have been a far less extreme and less abusive response. Not to mention that as a matter of common sense, and this was also testimony that was introduced, they could have obviously tapered him off the medication, etc. So, very much like in shorter, Costin introduced evidence, substantial evidence, that this was an exaggerated response. The jury could have concluded that this was an exaggerated response if not for the fact that it was instructed to defer to prison officials in their decision, so long as they justified it on the basis of security concerns, which they did. Are you arguing that the district court shouldn't have given any deference instruction or just that the caveat instruction should be given as well? Sure, your honor. So, per shorter, because Costin introduced substantial evidence of an exaggerated response, the instruction should not have been given at all. That said, even if this court were to disagree with that, shorter also tells us that at a minimum, if there's at least a factual dispute as to whether the instruction, as to whether the response was exaggerated, which at a minimum there was here, shorter then tells us that the instruction must be supplemented by that additional instruction that your honor referenced. So, in either scenario, the result is the same. The case should be reversed and remanded with instructions to the court to either not give the deference instruction at all, given the substantial evidence of exaggerated response per shorter, or at a minimum to supplement it with an additional instruction, making it clear to the jury that if they find that the response was exaggerated, they shouldn't defer. But as it was, the jury did not get that instruction and that was highly prejudicial because it essentially directed the jury's belief that there were indeed less extreme, less abusive alternatives available and that defendants should have followed them. The instruction instructed them to defer so long as they justified their actions based on security concerns and the instruction even says in their judgment, defer to their judgment. So the instruction took away the central questions in this case from the province of the jury. So it was highly prejudicial error, much like this court pointed out in shorter, excuse me, it essentially directed the jury's verdict. And again, that the prejudice of that error was very much compounded by the court's other errors, not only the medication policy, which we discussed a moment ago. You know, when you look at the policy and the instructional error, basically what happened is that not only was the jury instructed to defer based on defendant's judgment about security concerns, they then were deprived of much of the evidence that Costin sought to introduce to refute their security justifications. So that compounded the prejudice and likewise the missing testimony from Hale resulting from the court's error to even consider a continuance and not granting a continuance or a mistrial resulted in Costin not being able to introduce further testimony, further evidence that would have bolstered and allowed him to reinforce his argument about exaggerated response. Let me ask you about Hale then. If the court would have given a continuance, what additional questions would Mr. Costin have put to Hale? What else needed to be inquired of Mr. Hale? Well, your honor, Costin made it clear to the court that he wanted to ask Hale about the events that happened after the discontinuation. Costin alleged from the beginning that Hale witnessed him suffering withdrawal and disregarded it, that he knew he had submitted medical care requests and disregarded them. And also he made clear to the court that he wanted to ask questions about what had happened before the discontinuation, meaning Hale's delivery of the pills to his empty cell, which per Bogg's testimony, it seems like, you know, Hale would have testified that he indeed left pills in his empty cell at times. And again, that would have shown that this was an exaggerated response because he could have simply adhered to the proper protocol moving forward. So both the policy and the exclusion of Hale's testimony compounded the prejudice of the instructional error. And in addition to that, the prejudicial commentary to the jury regarding their absence also just made for Costin being deprived of his opportunity to present his case, his opportunity to have a fair trial, and therefore this case should be reversed and remanded so that he can get that fair trial. And your honors, I see that I'm about to run out of time. So unless your honors have any further questions, I'll reserve the rest of my time for rebuttal. All right, thank you very much, counsel. Thank you, your honors. Ms. McTavish? It pleases the court. On behalf of Dr. Nagelama and Nurse Hale, the briefs really kind of gloss over the essential fact in this matter, and that is what this trial was about. If we look at excerpts of record page 83 and 84, there's a conversation between Judge England and Mr. Costin where Judge And it reads that the court says, well, reading from the complaint, you went through withdrawal. So you're saying the facility and the defendants failed to treat you appropriately because you were in withdrawal from morphine. I assume addiction did. Mr. Costin says, exactly, your honor, the court, that's it, exactly. Mr. Costin, so I will move on to that specifically. The court then says, okay, let's get to the point of whether or not that's an issue or not. This is how you were injured, or if you were injured is relevant. It's about whether or not under the eighth amendment or under section 1983, that the institution was cruel and unusual in failing to give you additional morphine after the pills were found. Is that correct? Mr. Costin, not necessarily. The court asks, what's not necessarily? Mr. Costin states, I was not contending for the continued use of morphine. I was contending to be cared for, for the withdrawal of the morphine, not that they discontinued it in an appropriate way. It was how I was treated after the fact. When I was terminated, I was left abandoned by this doctor and this nurse and somebody, we have two orders here, one with a doctor's signature and one without the doctor's signature. So the order doesn't become final until the doctor's signature. The court saying, okay, just saying the order. I'm trying to make sure we're talking about the same thing. This is after the fact that you alleged in your complaint, you were treated cruelly and unusually and indifferently because you were not given additional morphine and other drugs to help with your withdrawal. Mr. Costin, absolutely. The court, so that's where we're going. Mr. That's where we are going. And so essentially he's saying that part of the cruel and unusual treatment was that they didn't taper him off of the morphine and made him just basically go cold turkey and the suffering that resulted from that, correct? Yes, your honor. And was that pursuant to a security based policy of the facility? And if so, can you show me in the record where there is evidence that that was done pursuant to a security based policy? Your honor, the testimony from correctional officer Boggs first talks to this, the safety and security of the institution. Officer Boggs directly testified that a inmate hoarding pills and attempting to pass them creates very real security concerns. And this is not just a case of hoarding. This was also an instance of passing pills. Well, that's, that's officer Boggs opinion. Where is the evidence that the institution has a specific policy? Did Boggs tell us that? It wasn't necessarily the policy, but it was the practice of not tapering off the morphine, but cutting it when he had, because the security concerns were so grave in this matter. Well, let me ask you this then, because when you say it wasn't a policy, but it was a practice, I'm looking at our court's decision in Shorter versus FACA from 2018, which by the way, I didn't see any comment about that in your response brief, but on page 1184, we said, we conclude that the deference instruction should ordinarily not be given in such circumstances. Rather, we reiterate that the instruction may be given only when there is evidence that the treatment to which the plaintiff objects was provided pursuant to a security based policy. So in light of that statement and your concession that it wasn't done pursuant to a policy, but to a practice, doesn't that mean necessarily that it was error to give that instruction? Not necessarily, your honor, because Shorter dealt with the practice of chaining female inmates to a table for security concerns. It was a widespread policy. In this particular instance, if there was ever a time where an inmate needed this instruction, and this of course deals just with the cessation of the morphine, we also have the testimony from Dr. Nagalanga talking about very real safety concerns that are presented when there is an inmate who is hoarding medication. He spoke to not only the risk of Mr. Kosman himself overdosing, but the fact that he's passing pills to other inmates. This creates a very real safety concern. Again, that was the doctor's opinion. Where's the evidence of the policy? And frankly, isn't the best evidence of what the policy was on these issues, the excluded piece of evidence, namely the operational procedure, the medical management procedure, including its discussion of the directly observed therapy? I mean, isn't that the best evidence of what the institution's policy was for circumstances of pill hoarding? For circumstances of pill hoarding, there are a few different concerns. Tampering was not appropriate in this case, and that was what Mr. Koston wanted to talk about regarding the medication policy. The problem that Dr. Nagalanga had is when you taper a patient, you have to have a baseline to taper them off of. We have somebody who we don't know what he is taking, what medication levels he's at. It's impossible to start tapering someone when you don't even have a baseline. In this matter, tapering was not appropriate. It was appropriate to give him other pain medications in accordance with his needs, his physical needs. And there's evidence that that was done. And as we also argue, there is also substantial evidence that even notwithstanding this instruction, the jury would have found that Mr. Koston was not suffering from withdrawals. Counsel, before we jump to that real quick, to kind of follow up on some of the questions that were raised in the previous argument, the case law as I read it in the Ninth Circuit talks about how even if the prison establishes that it was pursuant to some sort of policy, the complainant in this case has an opportunity to say, well, the response was exaggerated, it was too much. For example, if someone needs a cane to walk around in the prison, I could see the prison saying, well, they need to restrict how the cane is used because it could be an attempt maybe to see if there's some middle ground you could reach here. I didn't see in your briefs any effort to address that argument. So one, have you waived a response to the argument that Mr. Karerish has made about how they are allowed to have an instruction about is it proportionate effectively? And second, assuming it's not waived, what is your response to that? Your Honor, it's not waived because that was never brought up at trial, but Mr. Costin never asked for that. It was not part of the record about the exaggerated response. But to be fair to him, he did cite the chess case, which is kind of the case on this area. And I don't know if you need to cite every case on it. He cited chess. So assume he did his job. Well, you did not respond in your brief. So again, let's put aside what he did for a second. Have you waived the response? We do not believe we have, Your Honor, because it was not adequately addressed in the lower court. And it was kind of an extra argument there in terms of this exaggerated response. This language doesn't appear in the model instruction at all. And the cases aren't cited. So we believe that that argument is really inappropriate here because we do have the security-based concerns that we have addressed. Right. No, I guess the question, you know, and I mean, Judge Simon and I have both served on the Jury Instructions Committee. And we take great pride in that. But we also feel instructions are models. They're not technically the law of the circuit. And so the law of the circuit does talk about how it evidenced the response was an exaggeration. And there's this Mendiola case at 1257 that talks about that. So again, even if there is a legitimate security concern, it has to be proportionate. And I think what Mr. Kostin is arguing is that it wasn't proportionate here, that even if you needed to restrict the morphine in some way, there are ways you could have administered something so he wouldn't have suffered. I think it's the argument that they're making. So as to that exaggeration point, what is your response to that? Your Honor, looking at the Mendiola case, the appellant did not raise the argument that the district court should have given the additional instruction regarding that response. And of course, this was the Mendiola case. It was advisory language that if this goes back, maybe we should include this. It's not very well fleshed out in terms of case law. I couldn't find a case where that instruction as formulated was actually given, that the response was exaggerated, where that instruction was challenged or given. It's kind of a novel area. And so we just don't know what the circumstances would be for that. And we believe in this matter, the response was appropriate in cutting off the morphine. So it was not necessarily even prejudicial to Mr. Kostin to not have that language in there, because there was such compelling evidence that the response was appropriate in this matter. And given that he had clarified with the court that this case was really about withdrawal treatment, that the issue of cutting off the morphine wasn't necessarily his issue at trial. That's why he wanted to question Nurse Hale regarding some of the withdrawal symptoms that he claimed to have suffered from. And we have this dialogue between the court and Mr. Kostin, where we're trying to figure out really, really the basis of his argument. And so any lack of exaggerated response language would not be prejudicial to the case, because the underlying issue really concerns the treatment for withdrawal. And the jury heard overwhelming evidence from Dr. Nagelama that any symptomology that Mr. Kostin complained of, any nausea, vomiting, those occurred 11 days after the cessation of the morphine. And Dr. Nagelama testified that if you do have withdrawal symptoms, they happen within 48 to 72 hours. And there was no evidence that Mr. Kostin sought medical care, had any complaints of withdrawal symptoms in that window. And there was also testimony from Dr. Nagelama that the level of morphine that he was prescribed would not have even created this type of dependency. So any lack of that extra language that has been suggested, but not necessarily made to be vital by the Mandola-Martinez v. Arapahoe case was not prejudicial to Mr. Kostin. And very briefly, counsel also addressed the continuance issue for the absence of Nurse Hale. Again, that gets back to what the issues were in the case. Counsel expressed that the events that happened after discontinuation would have been brought up. That was also brought up in testimony with Dr. Nagelama and with Mr. Kostin himself. And he talked a little bit about what happened in terms of the delivery of the medication that Nurse Hale would have testified regarding how those medications were delivered. I would point the court to, it was Plaintiff's Exhibit 14, and it's at the record at 499, where we have the medication delivery records. And we only see Nurse Hale's initials just a few times. So Nurse Hale could not have testified regarding the delivery of the medication by every other nurse that had potentially saw Mr. Kostin. It was completely unprejudicial to Mr. Kostin for to be excused from the trial for good reason. Did the court have any other inquiries? It doesn't look like it. If you're done, you've made your point. Like I said, it's always good to end the time on the clock. So with that, thank you very much, Ms. McTavish. Thank you, Your Honor. Okay, so back to counsel. I think we're going to have a little switch here. There we go. And there you go. You are unmuted. You may proceed. Good morning, Your Honors. My name is Amanice Montes, and I'm also a certified law student representing Mr. Kostin in this case with my co-counsel. I'd like to begin by addressing a few things in opposing counsel's argument. First of all, there was a series of questions about the exaggerated response inquiry that the defendants were, their actions were exaggerated compared to the security concern. And so I'd just like to return to that. And as your inquiry suggested, there was evidence that there was a menu of options for Mr. Kostin to receive his medication. Opposing counsel argues that tapering of the medication was impossible, but the defendants never testified to this fact at trial. And not only was tapering an option, but additionally, there was a form of medication, liquid medication, that the defendants could have provided that would have made passing of pills or hoarding impossible. So that just shows and reinforces that the defendant's response was exaggerated and that they could have addressed. What's your response to Apelli's argument that the tapering was not appropriate, according to Dr. Nagelama, because there was no baseline? They didn't really know how much Mr. Kostin had been taking. Therefore, they didn't know how much to allow him, even with tapering, going forward. Well, Your Honor, they could have tested his levels if that was a concern, or they could have counseled with Mr. Kostin prior to terminating the medication, but they didn't do any of that. They simply went to the most extreme solution here and just terminated his medication cold turkey. So again, there were solutions here that could have addressed both their security concern and Mr. Kostin's constitutional rights to medical care. Additionally, the opposing counsel argues that this is a novel series of cases in providing a supplemental instruction of the exaggerated response. But the case law in this circuit has held repeatedly in Shorter and Mendiola-Martinez and multiple cases that the exaggerated response supplemental instruction is appropriate when there is at least a material dispute that there is an exaggerated response, and that is the case here. And then what's your response to Ms. McCavish's argument that Dr. Nagelama testified that the symptoms of Mr. Kostin only appeared after 11 days, and that's inconsistent with symptoms being caused by withdrawal? Well, Your Honor, I'd like to point out that likely every patient is going to experience withdrawal in different ways. And so I don't know if we can just trust that withdrawal has to happen within the 48 and 72 hours, but even if that's the case, Mr. Kostin presented evidence and he would have presented more if Mr. Hale was able to testify that Mr. Hale saw him the day after terminating the medication, said that he didn't look well, laughed and walked away. And that is a medical observation made by a medical professional that perhaps he looked ill at that time. And that's exactly why it was prejudicial to exclude Mr. Hale without a continued mistrial. Additionally, Mr. Kostin submitted into evidence at trial a sick call request within a few days of terminating the medication where he stated that was experiencing night sweats, pain all over his body, pain in his stomach. And that also corresponds with withdrawal symptoms and corresponds with the withdrawal symptoms that he was treated with when he was rushed to the hospital after he was found on the floor of a cell covered in vomit. So even if we adhere to this 48 or 72 hour time frame, there's still ample evidence that Mr. for the jury. Here our focus is on whether these errors were prejudicial to Mr. Kostin. And as we have been arguing, the jury instruction just took away the central issue from the case and was essentially a directed verdict in favor of the defendants. Speaking of jury trials, this was the second jury trial, correct? So if we do reverse and some counsel for the third trial, if there is a third trial? Yes, your honor, we are positive that our clinic will be able to assist him with attempting to receive counsel on this case. Additionally, I'd just like to quickly state that the defendants, as your questions arose, have essentially waived their argument about the exaggerated response argument, as this court in Cincinnati has held that if a party does not raise an argument about a non-frivolous claim, that it essentially waives the issue. And the defendants have failed to raise not only the exaggerated response argument, but also have failed to argue a harmlessness argument here as well. And as we have been arguing, the jury instruction did, in fact, prejudice Mr. Kostin, and it was compounded by the multiple other errors at trial as well, with Mr. Hale not being able to testify. It also excluded relevant evidence to the discontinuation of medication and the deliberate indifference, as well as the additional comments made by the court that stirred the sympathies of the jury members and the exclusion of the medication management policy, which we have been speaking about. And so I know that my time is up, but I'd just like to end by saying that any of these individual errors warrant this court to reverse and remand for a new trial. But cumulatively, the multiple errors at trial essentially made it so the jury had to prejudice. So respectfully, we request this court to reverse and remand so that Mr. Kostin can have a fair opportunity to present his case. Thank you very much, counsel. I want to thank both counsel in this case for their briefing and argument, very helpful. I want to thank UCLA for stepping up. I'm going to thank McGannon for the next case, but nevertheless, I want to thank you two for stepping up and doing this. Appreciate it. Thank you so much, your honors. This matter is now move on to the next case. I hope I'm pronouncing this correctly. Shaziza versus John. And we'll take a moment to make sure we've got everybody here.
judges: Owens, Simon, Lee